# UNITED STATES v. WAUNA TOLL BRIDGE CO. et al.

## No. 10005.

Circuit Court of Appeals, Ninth Circuit.

Sept. 25, 1942.

Norman M. Littell, Asst. Atty. Gen., J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Vernon L. Wilkinson and Norman MacDonald, Attys., Department of Justice, both of Washington, D. C., for appellant.

Grosscup, Morrow & Ambler and John Ambler, all of Seattle, Wash. (Charles Snyder, of Walla Walla, Wash., of counsel), for appellees.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

This appeal is taken from a judgment for appellees in a condemnation proceeding brought by appellant.

The Act of March 23, 1906, 34 Stat. 84, 33 U.S.C.A. § 491 et seq. was an act entitled "An Act to regulate the construction of bridges over navigable waters". Section 4 of that act provided in part: "That no bridge erected or maintained under the provisions of this Act [chapter, sections 491 to 498, inclusive], shall at any time unreasonably obstruct the free navigation of the waters over which it is constructed, and if any bridge erected in accordance with the provisions of this Act [chapter, sections 491 to 498, inclusive], shall, in the opinion of the Secretary of War, at any time unreasonably obstruct such navigation, either on account of insufficient height, width of span, or otherwise * * * it shall be the duty of the Secretary of War, after giving the parties interested reasonable opportunity to be heard, to notify the persons owning or controlling such bridge to so alter the same as to render navigation through or under it reasonably free, easy, and unobstructed * * * and all such alterations shall be made and all such obstructions shall be removed at the expense of the persons owning or operating said bridge. * * *" The Act of February 3, 1920, 41 Stat. 401, granted to Interstate

Construction Corporation, a Washington corporation, authority to construct a bridge over the Columbia River, at a point about two miles west of Cascade Locks, Hood River County, Oregon, in accordance with the provisions of the Act of March 23, 1906. Franchises obtained from the proper counties in Washington and Oregon required the bridge to be open to the public for travel "at all times".

Appellee, Wauna Toll Bridge Company, a Washington corporation, hereafter called appellee, is a successor in interest to the rights originally acquired by Interstate Construction Corporation, the rights under the franchises, and the right of way required for construction of the bridge. Construction of the bridge was completed, and operation thereof began, in 1926. Between the bridge over the Columbia River, from Portland, Oregon, to Vancouver, Washington, and the confluence of the Snake River and the Columbia River, there are only two bridges across the Columbia River in the 225 miles, one of which is the bridge in question.

The Bonneville Project, construction of which was begun in 1933, includes a dam across the Columbia River, about 2 miles below the bridge in question. The dam is designed to raise the level of the Columbia River above the dam 24 feet above the natural high water mark, which required the bridge in question to be raised.

By resolution of February 19, 1937, adopted by the Senate Committee on Commerce, the Board of Engineers for Rivers and Harbors was requested to review a previous report "to set forth all facts in respect to the bridges in question that will serve to guide the committee in determination of an equitable adjustment of the cost of such alterations". The Board on May 14, 1937 submitted its report to the Chief of Engineers who submitted it to the Committee on June 21, 1937. The Board's report specifically stated that modification of the bridge in question would be necessary "to pass masted vessels".

On May 22, 1937, the Secretary of War wrote the Attorney General requesting the latter to institute condemnation proceeding. The letter states: "The bridge company refuses to convey flowage rights on its right of way, unless the price includes the estimated cost of altering its bridge to meet the requirements of navigation after completion of the Bonneville Dam".

On July 17, 1937, appellant filed the instant petition to obtain by condemnation a flowage easement, permitting appellant to back up water over the easement and two piers supporting appellee's bridge. The Act of August 16, 1937, 50 Stat. 648, provided: "That the Secretary of War be, and he is hereby, authorized and directed to cause such alterations in existing bridges across the Columbia River at Cascade Locks and Hood River, Oregon, as will render navigation for oceangoing vessels in the pool formed by the Bonneville Dam reasonably free, easy, and unobstructed, and to reimburse the owners of said bridges for the actual cost of such alterations from appropriations heretofore or hereafter made for maintenance and improvement of rivers and harbors." Appellee entered an appearance in the condemnation proceedings. A dismissal of the proceeding was subsequently set aside. On the first trial, there was a verdict of no damages. On the second trial, verdict was for appellee for $20,000 upon which judgment was rendered.

Appellee contends that appellant was obligated to pay not only the fair market value of the easement taken, but also the depreciation in the remaining property, and that such depreciation was: loss of tolls—$5,887.92, ferry expenses—$6,958.83, and increased maintenance expenses of a present value of $22,000. The court below agreed with that theory, permitted evidence of such expenses, and gave instructions permitting the jury to consider such items.

While it may be true, as a general rule, that just compensation includes the depreciation on property remaining after a part is taken, that rule has little bearing here because of the specific statutes involved.

■ Under the 1906 act, appellee could have been compelled to alter the bridge at its own expense. Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; Monongahela Bridge Co. v. United States, 216 U.S. 177, 30 S.Ct. 356, 54 L.Ed. 435; Hannibal Bridge Co. v. United States, 221 U.S. 194, 31 S.Ct. 603, 55 L.Ed. 699; Louisville Bridge Co. v. United States, 242 U.S. 409, 37 S.Ct. 158, 61 L.Ed. 395. That act provided that "no bridge erected or maintained under the provisions of this Act [chapter, sections 491 to 498, inclusive], shall at any time unreasonably obstruct the free navigation of the waters

over which it is constructed". Appellee was under the duty to maintain the bridge in such a manner that it would not "unreasonably obstruct the free navigation of the waters". The items in question are some of the things which appellee would have to do in order to perform the duty prescribed by statute, i. e., maintain the bridge so that it would not unreasonably obstruct traffic, and appellee cannot shift that duty to the government by the device of a condemnation proceeding. Appellee would be relieved of its duty only by the consent of Congress. It does not contend that the 1937 statute, or any other statute or decision relieves it of that duty.

The above-cited cases show that appellee not only has no right to recover for the items mentioned, but actually has the duty to bear the expense thereof. To support its contention that it has a right to recover for the items, appellee relies on: United States v. Chicago, B. & Q. R. Co., 8 Cir., 82 F.2d 131, 106 A.L.R. 942; United States v. Chicago, B. & Q. R. Co., 7 Cir., 90 F.2d 161; United States v. Wheeler Tp., 8 Cir., 66 F.2d 977; United States v. Wabasha-Nelson Bridge Co., 7 Cir., 83 F.2d 852. These cases are not in point. None of them involved the act of 1906 or the alteration of bridges thereunder.

■■ Appellee contends that it has no duty because there was no finding by the Secretary of War that the bridge unreasonably obstructed navigation. Congress had the right to determine that question itself. Union Bridge Co. v. United States, supra, 204 U.S. page 386, 27 S.Ct. 367, 51 L.Ed. 523; Monongahela Bridge Co. v. United States, supra, 216 U.S. page 192, 30 S.Ct. 356, 54 L.Ed. 435. Since it directed alteration of the bridge it necessarily found that the bridge would or did unreasonably obstruct navigation. Therefore, there was no occasion for the Secretary of War to hold hearings and make a finding.

■ Finally, appellee contends that it had a right to rely on the natural high water mark, and since the bridge was adequate for the river at that height, it had no duty to alter the bridge because the river was artificially raised. The 1906 act is in words contrary to that contention for it provides that no such bridge shall "at any time" unreasonably obstruct navigation. Monongahela Bridge Co. v. United States, supra, 216 U.S. pages 193, 194, 30 S.Ct. page 360, 54 L.Ed. 435, supports the view last expressed in the following language: "Although the Brownsville Bridge was originally constructed under the authority of the commonwealth of Pennsylvania, and may not, at the date of its erection, have been an illegal structure or an unreasonable obstruction to navigation in the condition, at that time, of commerce and navigation on the Monongahela River, the bridge must be taken as having been constructed with knowledge, on the part of all, of the paramount power of Congress to regulate commerce among the states, and subject to the condition or possibility that Congress might, at some time after its construction, and for the protection or benefit of the public, exert its constitutional power to protect free navigation as it then was against unreasonable obstructions * * *."

We think appellee was not entitled to recover for the three items mentioned, and that evidence concerning them should not have been admitted in the condemnation proceeding.

Reversed.